Submitted on record and briefs October 22, affirmed
November 18 1974

IN THE MATTER OF BLACK, TIMOTHY, EDWARD, BARBARA,
MINOR CHILDREN.

STATE EX REL JUVENILE DEPARTMENT OF
MULTNOMAH COUNTY, *Respondent, v.* BLACK
ET UX (No. 37,837), *Appellants.*

528 P2d 130

Richard G. Helzer, Portland, for appellants.

Harl Haas, District Attorney, and Betsy Welch, Senior Deputy District Attorney, Portland, for respondent.

Before Schwab, Chief Judge, and Langtry and Fort, Judges.

LANGTRY, J.

This appeal is by a husband and wife from a judgment terminating their parental rights to three children. They assert that there was insufficient evidence to support the judgment, and that a psychologist's testimony concerning them was privileged, and hence was erroneously received in evidence.

The record shows the children are now six, five and three years of age. The first petition alleging child neglect was filed in July 1969, before the second and third children were born. In succeeding years more petitions were filed, and the last petition, resulting in the judgment in question, was filed in March 1974. The children were removed from the parents and placed in foster care in March 1972, at which time they became wards of the court. Throughout the time when the petitions were being filed, the parents were alleged to have had frequent episodes of drunkenness. The middle child, while in the care of a babysitter, "sustain[ed] certain burns and bruises and abrasions of [sic] which the parents did not secure medical help * * *"

The record shows that present counsel is the third that has been provided for the parents at public expense for their recurring juvenile court appearances. They have frequently been welfare recipients and have

received other financial assistance, guidance and training from numerous social agencies. The Children's Services Division has worked diligently for one-and-one-half years with them, the contacts with them by the Division caseworkers numbering about 200. Specific programs for them to follow for their betterment, directed toward return of their children, have been organized and implemented. Their cooperation has been patiently sought by the involved social agencies. In spite of these efforts little, if any, desirable progress has been made. Regarding his observation generally and of the last visitation of the children in their parents' home particularly (1973), their most recent Children's Services Division caseworker testified on cross-examination:

"They have not shown any ability to take care of themselves on any regular basis whatsoever, much less take care of somebody else.

"Q [By attorney for petitioners] How do you know that?

"A Because I have had to work with the different agencies and support them financially and to help them in every program whenever they have been in arrears in their affairs; they have come to me for food on at least five or eight occasions, plus they have required all kinds of maintenance help, and I have done this many times.

"Q When did this occur?

"A All those things?

"Q Yes.

"A All year long even towards the end of the year at Christmas time and even at Thanksgiving I had to take them to the Sunshine Division to get food for the kids.

"Q These things occurred with them in spite of your help?

"A Yes."

After the last petition directed toward termination of parental rights had been filed and the case set for hearing (with the parents' knowledge thereof), Mrs. Black became intoxicated during an evening at a tavern, and at 2 a.m. the police were called to their address to find her bleeding with teeth knocked loose by a kick from her husband. This was with knowledge that drinking was the principal obstacle to their regaining their children.

A psychologist examined them pursuant to Children's Services Division request (and at Division expense) and consent therefor given by their counsel after a consultation with them in which he told them the psychological examination was for use in the termination proceeding and the psychologist would testify. The psychologist concluded and testified, in effect, that because of their dyssocial personalities①

---

①

"A [By psychologist] The dyssocial personality is a category of the sociopathic personality type. This refers to a characteristic life-style where they acquire a problem and associate with that problem. In fact, in distinguishing between a socio-pathic personality dyssocial type and, say, neurotics, the dyssocial person does not feel discomfort by their symptoms. This is consistent with their way of life, whereas the neurotic has discomfort but the neurotic does not want to change that way of life. The dyssocial accepts that as appropriate for the style in which they will function. The dyssocial individual does not experience stress by the symptoms, only by some of the consequences should they run afoul of society.

"* * * * *

"* * * I would say that dyssocial sociopathic, yes, almost inevitably would be incapable of acting as a custodian of children and raising the children according to the most universally accepted mores. Some of the most typical characteristics of a sociopath are his inability to develop a system of any kind of personal relationships based upon mutual concern and caring for the other individual."

and chronic alcoholism there is little hope that the parents have the capability to ever give their children minimally acceptable care.

■ This case parallels and is closely similar to *State ex rel Juv. Dept. v. McMaster,* 18 Or App 1, 523 P2d 604, Sup Ct *review denied* (1974). The evidence is more than adequate to support the court's judgment.

■ As we have noted, counsel gave consent to the psychological examination. He and the parents knew its purpose and that the psychologist would testify as to his conclusions in the termination proceedings. The privilege of ORS 44.040 (1)(h) does not apply, because on the one hand they were not the psychologist's "clients" "in the course of his professional employment," he was not examined as to any communication they made to him that was received in evidence, and he was not examined as to any advice he gave them;[2] on the other hand the circumstances would amount to a waiver of the privilege, if any existed. *See* discussion in *State ex rel Juv. Dept. v. Wade,* 19 Or App 314, 527 P2d 753 (1974), and *State ex rel Juv. Dept. v. Martin,* 19 Or App 28, 526 P2d 647 (1974).

Affirmed.

---

[2] "(1) There are particular relations in which it is the policy of the law to encourage confidence, and to preserve it inviolate; therefore a person cannot be examined as a witness in the following cases:

"* * * * *

"(h) A licensed psychologist, as defined in ORS 675.010, shall not, without the consent of his client, be examined as to any communication made by the client to him, or his advice given thereon, in the course of his professional employment." ORS 44.040 (1)(h).